THE PEOPLE *ex rel.* Welty, County Collector,

*v.*

THE CHICAGO, BURLINGTON AND QUINCY RAILROAD CO.

*Filed at Ottawa January 19, 1897.*

1. TAXES—*the statutory method of taxing property must be substantially followed.* The method prescribed by statute to subject property to the burdens of taxation must be substantially complied with before the property can be taken and sold in satisfaction of the tax.

2. SAME—*sections 110 and 116 of the Road and Bridge act, concerning road taxes, are mandatory.* The provisions of sections 110 and 116 of the Road and Bridge act, (Laws of 1883, p. 137,) requiring the overseer of highways to deliver his sworn list of road taxes to his town supervisor, and requiring such supervisor to present the same to the board of supervisors at their annual meeting, are mandatory.

3. SAME—*supervisory power over road tax levy is vested in the board of supervisors.* Section 117 of the Road and Bridge act vests in the board of supervisors a supervisory power over the road tax lists prepared by the highway commissioners, to correct the same if not in conformity to the law, and to authorize the county clerk to extend the delinquent list upon his books.

4. SAME—*road tax illegal when list was never before board of supervisors.* A road tax entered by the county clerk as delinquent at the request of commissioners of highways, cannot be sustained where the list describing the same was never delivered to the town supervisor or submitted to the board of supervisors,.as required by law.

WRIT OF ERROR to the County Court of Lee county; the Hon. R. S. FARRAND, Judge, presiding.

BROOKS BROS., for plaintiff in error:

Objections to taxes levied by municipalities will not be entertained where the irregularities insisted upon do not affect unjustly the rights of the citizen. *Chiniquy* v. *People*, 78 Ill. 570; *Purrington* v. *People*, 79 id. 11.

The facts that the delinquent lists were never submitted to the board of supervisors and that it never acted upon them are simply irregularities, and do not go to the substantial justice of the tax. *Railway Co.* v. *People*, 138 Ill. 316; *Gage* v. *Bailey*, 102 id. 11; *Purrington* v. *People*, 79 id. 11; *Railway Co.* v. *People*, 116 id. 232.

The only duty of the board of supervisors was supervisory,—that is, to see that any part of the tax in arrears, not paid at the time of their annual meeting, is levied on land returned.   *Railroad Co.* v. *People*, 116 Ill. 242; *Railroad Co.* v. *People*, 138 id. 303; *Gage* v. *Bailey*, 102 id. 11.

D. W. BAXTER, (O. F. PRICE, of counsel,) for appellee:

In *Peoria, Decatur and Evansville Railroad Co.* v. *People*, 116 Ill. 237, the court passed upon the levy made under section 119, and held that the lists must be laid before the county board in order to authorize the clerk to spread the tax upon the books.

In *Ohio and Mississippi Railway Co.* v. *People*, 119 Ill. 207, the court holds that the railroad tax provided for by section 83 and the road and bridge tax provided by section 119 are two separate and distinct taxes.

In *Ohio and Mississippi Railway Co.* v. *Comrs. of Highways*, 117 Ill. 279, the court holds that section 117 must be complied with where the tax is levied under the provisions of section 119, and the reasoning in that case applies with equal force to the case at bar.   See, also, *Railway Co.* v. *People*, 123 Ill. 648; *Railway Co.* v. *People*, 138 id. 316; *Railway Co.* v. *People*, 116 id. 241.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an application in the county court of Lee county, at the May term, 1896, for judgment against the property of defendant in error for taxes amounting to the sum of $216, alleged to have been assessed in the town of Harmon by the commissioners of highways for the year 1889, for making and repairing roads.   The defendant in error appeared in the county court and filed objections to the application for judgment, and a hearing was had before the court on an agreed statement of facts, as follows: That Lee county is organized under the Township Organization act; that the township of Harmon is one of the townships of Lee county; that said township has

adopted what is known as the labor system for the pay-
ment of road tax; that the road commissioners of said
town, on April 19, 1889, levied and assessed the road tax
against the Chicago, Burlington and Quincy Railroad
Company, described in the county collector's application
for judgment for said back tax; that the tax was levied
and assessed pursuant to the 83d and 84th sections of
chapter 121, entitled "Roads and Bridges," of the statutes
of Illinois; that said commissioners made a list of the
property of said railroad company, known as railroad
track and rolling stock, of which the lists hereto are cor-
rect copies; that said lists were subscribed by the com-
missioners and deposited with the town clerk; that said
clerk made lists as directed by the commissioners, which
they subscribed and gave to the overseers of highways of
districts Nos. 1, 2 and 3; that said railroad company did
not work out or pay said tax, or any part thereof, to any
one authorized to receive it; that said overseers returned
said tax list unpaid, and sworn to, to the town clerk for
the supervisor of the town, but did not return it to the
supervisor in person; that the supervisor of said town for
1889 did not receive said lists; that he did not lay them
before the board of supervisors at their September meet-
ing of 1889, or at any meeting since that time, by any
supervisors of said town, but the supervisor of 1896 was
requested to lay them before the board of that year, and
refused, though requested by the commissioners of high-
ways; that the county clerk, at the request of said com-
missioners of highways, spread said delinquent tax upon
the records as back tax; that said tax was never paid
by said railroad company; that all the taxes against said
railroad for 1889 were paid.   On the hearing the court
sustained the objections interposed by the defendant and
denied the application for judgment, and the collector
has brought the record here for the purpose of reversing
the judgment of the county court.

It will be observed that by the agreed statement of facts it appears that the tax lists in question were not presented to the supervisor of the town of Harmon for the year 1889 by the overseers of the town, and that said lists were not presented by the supervisor of said town to the board of supervisors of Lee county for that year or for any year thereafter, and that the board of supervisors of Lee county never had said lists before it at any time, and never made any order concerning the same, and that the tax was spread upon the tax books as delinquent taxes without any authority from the county board, and that it was so spread in the year 1896, and judgment for tax sale asked at that time for these taxes claimed to be assessed against the railroad company in the year 1889.

Section 83 of chapter 121 of the Road law provides that the commissioners of highways of each town shall annually ascertain how much money must be raised by tax on real and personal property, and railroad property known as "railroad track" and "rolling stock," for making and repairing roads only, not exceeding forty cents on each $100, as equalized for the previous year, and shall levy and assess the same as a road tax against said property.   Section 84 provides that the commissioners shall affix to the name of each person named in the lists furnished by the overseers the number of days assessed to each person for highway labor, and shall make a list for each district, containing a description of each tract of land in the district, and the name of the owner, and the name of the owner of any railroad property, which shall be subscribed by the commissioners and deposited with the town clerk and filed in his office.   Section 85 provides that one copy shall be made for each of the overseers by the town clerk.   Section 95 provides that the overseers shall give three days' notice of the time and place when and where each person is to appear to work on the highways, and with what implements.   Section 96 provides

that every person able to work shall work the whole number of days for which he has been assessed, or he may commute the same at the rate of one dollar per day and pay the money to the overseers of highways.  Section 109 provides for the overseer of highways giving receipts for money or labor, and to write the word "Paid" distinctly against each name or tract on his list which has been paid.  Section 110 provides that every overseer shall deliver to the supervisor of his town, at least five days previous to the annual meeting of the county board, his list containing the land and personal property road tax, with an affidavit thereto that the tax on each tract of land is paid, or delinquent and unpaid, as the case may be.  Section 116 is as follows: "It shall be the duty of the supervisors of the several towns to receive the lists of the overseers of highways when delivered, pursuant to section 110 of this act, and to lay the same before the board of supervisors of the county."

It is claimed in the argument that the fact that the delinquent lists were never delivered to the supervisor of the town and never returned to the board of supervisors is a mere irregularity, which does not affect the substantial justice of the tax, and hence the court erred in denying judgment.  We do not concur in that view. In *Peoria, Decatur and Evansville Railway Co.* v. *People ex rel.* 116 Ill. 232, after referring to section 110 of the statute and also to sections 116 and 117, this court, among other things, said (p. 241): "Manifestly, therefore, it was designed by the General Assembly that the tax-payers should have the guaranty of protection against unauthorized and excessive burdens of taxation in these respects afforded by the supervision of the board of supervisors. Although that board could not reject the action of the commissioners of highways when within their lawful authority, yet we think, beyond question, that if it appeared from the statements laid before the board that they were, in truth, not what they purported to be, or

that a majority of the commissioners had not concurred in levying the tax, or that the tax was levied for a purpose not authorized by law, or that it exceeded the rate per cent allowed by law, it would be the duty of the board to direct that the amounts be not extended, but that the statements be returned for correction, if susceptible of correction, and if not, that they be utterly disregarded by the clerk. In respect to these matters, the duty under these sections is not on the clerk, as it sometimes is, but on the board of supervisors, and the clerk's duty is limited to extending the levy in the proper column when the statements are delivered to him for that purpose. It would, moreover, seem desirable that the statements required by section 119 should be before the board of supervisors, to enable them to intelligently make the requisite orders under section 116 and the proviso to section 119, in order that the amounts of such taxes be included and extended with the tax assessed under section 119, as elsewhere required."

In *Wabash Railroad Co.* v. *People ex rel.* 138 Ill. 303, in considering the same sections of the statute presented for consideration in this case, it was held that the lists pass into the hands of the board of supervisors from the possession of the town supervisors, and should not go into the hands of the county clerk until they have been laid before the board. It is there said (p. 308): "It is clear that these lists or statements pass into the hands of the full board from the possession of the town supervisors. They should not go into the hands of the county clerk until they have been laid before the board." In regard to the power of the board to make a levy it is said (p. 307): "It was not the intention of section 117 to confer upon the board of supervisors the power to make an original levy, but merely to supervise the levy already made by the highway commissioners, and after being satisfied that it is in proper shape and for a lawful purpose and within the legal rate, to cause steps to be taken for its collec-

tion. To this end it is the duty of the board to deliver the lists or statements so submitted to it to the county clerk to be extended, provided such lists or statements need no correction." In *Wabash Railway Co.* v. *People*, 138 Ill. 316, it was held that the statute vested in the board of supervisors a supervisory power over the levy.

If the board of supervisors are required by the statute to exercise a supervisory power over the proceedings, which, in the end, are to culminate in a tax on property of the road district, can a tax be sustained where the proceedings have never been before the board of supervisors, as required by statute? Here the statute in plain terms required the overseers of highways to deliver to the supervisor of the town, five days before the annual meeting of the board of supervisors, the lists furnished by the commissioners of highways, and the supervisor is required to receive the list and lay the same before the board of supervisors; and section 117 of the statute requires the board of supervisors to cause the amount of arrearages of the road tax returned to be levied on the lands returned, and collected in the same manner that other taxes of the county are levied and collected. No one of these provisions of the statute was complied with. The lists were never delivered to the supervisor of the town, nor were they ever placed before the board of supervisors by the supervisor or any other person, but, on the other hand, the county clerk assumed the responsibility of extending the tax without any direction or authority from the board of supervisors or any person having authority to act in the premises. Where the legislature has prescribed a certain method to be adopted to subject property to the burdens of taxation, that method must be substantially complied with before the property can be taken and sold in satisfaction of the tax. That was not done here. There was no compliance with the law, where it was essential that there should be a compliance in order to protect the rights of the parties.

Under the statute it was the right of the tax-payer to have the lists presented to the board of supervisors for their inspection and supervision, and for correction if the lists did not conform to the law.   That was not, however, done, but the lists were extended on the tax books, disregarding this plain provision of the statute.   We perceive no way that the tax in question can be sustained without a total disregard of the requirements of the statute.

The judgment of the county court will be affirmed.

*Judgment affirmed.*